*E-Filed 11/23/15*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

THOMAS R. MORALES,

    Petitioner,

    v.

ELVIN VALENZUELA, Warden,

    Respondent.

                                      /

No. C 14-4040 RS (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner seeks federal habeas relief from his state convictions. For the reasons set forth below, the petition for such relief is DENIED.

## BACKGROUND

In 2011, a Contra Costa County Superior Court jury convicted petitioner of inflicting corporal injury on a co-habitant and personally causing great bodily injury. In 2013, he was sentenced to a total term of 7 years in state prison. He sought, but was denied, relief in the state courts. This federal habeas petition followed.

Evidence presented at trial showed that in 2010, petitioner broke the jaw of his girlfriend, Frances Navarro. The investigating police officer, Ryan Ruff, said that "half of

her face was hanging a couple inches below the other half of her face." (Ans., Ex. 8 at 1.) At trial, Frances's sister Mercedes testified that Frances told her petitioner hit her in the mouth. (*Id.*) She also testified that Frances's son, Xavier, told her petitioner hit his mother and that she was in the hospital. (*Id.*) Xavier testified he told police Frances told him petitioner hit her, but asserted he was lying to police. (Ans., Ex. 2 at 108–09.) Officer Ruff testified Xavier told him Frances stated petitioner had hit her in the jaw. He also testified he spoke to petitioner's relation, Gordon Gullo, who told Ruff Xavier told him Frances said petitioner had hit her. In addition to this evidence, testimony was presented that petitioner, after finding how injured Frances was, had his uncle, Jose Parra, drive him to BART so that he could catch a train to Walnut Creek (*id.* at 4), though it appears he wound up in San Francisco (*id.*, Ex. 2 at 145).

Frances, however, denied she knew who had hit her. (*Id.*, Ex. 8 at 1–2.) She testified her jaw was broken in a store parking lot in Pittsburgh by someone she did not see. (*Id.*) She testified that she drove home immediately where she found petitioner and asked him to leave because, according to her, he wanted to take her car to find the person responsible. (*Id.* at 2.) Frances also testified that petitioner never visited her during her five-day stay at the hospital where she was recuperating from surgery on her jaw. (*Id.* at 4.)

As grounds for federal habeas relief, petitioner claims the trial court violated his right to due process by (1) denying him a post-conviction competency hearing; and (2) giving a flight instruction to the jury.[1]

---

[1] Respondent contends some parts of one claim are not exhausted. (Ans. at 3–4.) He arrives at this conclusion through the following reasoning. In order to exhaust a claim, a petitioner must present that claim to the state supreme court, which then must rule on the claim's merits. Here, because the state supreme court denied the petition for discretionary direct review, the claims were never reviewed on the merits and therefore were not exhausted. This is not correct. In truth, a petitioner need only give the state's highest court an opportunity to rule on the claims, *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), which petitioner did when he petitioned the state supreme court for direct review. Under respondent's reasoning, none of the claims are exhausted because the state supreme court declined to review any of them.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. § 2254(d). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

## DISCUSSION

### I. Post-Conviction Competency Hearing

Petitioner claims that the trial court violated his right to due process when it failed to hold a competency hearing after conviction but before sentencing. He contends that evidence before the court showed that he was a paranoid schizophrenic whose psychiatric disability prevented him from understanding the justness of the verdict and the societal purpose of punishment. (Pet. at A1, A6, and A11–13.)

The trial court granted petitioner's request to have a psychologist interview him before sentencing. (Ans., Ex. 8 at 2.) After this interview, defense counsel informed the court that his client "appeared psychotic." (*Id.* at 3.) The trial court then appointed a psychiatrist, Dr. Martin Blinder, to examine petitioner. (*Id.*) Blinder reported that petitioner, though "psychotic," was a "reasonably articulate individual who comprehends all questions and replies with apparent candor." (*Id.* at 8.) He was "oriented to time, place and person . . . is alert to his surroundings . . . and [t]here are no hallucinations or illusions." (*Id.*) Petitioner told a logical and coherent narrative, understood that his attorney was there to defend him, and that the prosecutor "puts people away." (*Id.*) He believed that the judge and jury were supposedly even-handed but in reality were, in Blinder's words, "contaminated by the evil forces arrayed against him." (*Id.*) Blinder found that petitioner understood the sentence he was facing, but his "delusions prevent him from perceiving the justness of the verdict." (*Id.* at 8–9.) Petitioner would "require antipsychotic medications to restore his sanity." (*Id.* at 9.) After reviewing Blinder's report, the trial court determined there was "not reasonable cause to believe that the [petitioner] is 'insane' under section 1201." (*Id.* at 3.) In consequence, no competency hearing was held.

4

No. C 14-4040 RS (PR)
ORDER DENYING PETITION

The state appellate court rejected petitioner's claim even though the trial court used an incorrect competency standard[2]: "Blinder's examination and report do not raise a doubt about whether [petitioner] was competent under section 1367."[3] (*Id.* at 9.) The appellate court noted that petitioner "clearly understood" the nature and object of the trial proceedings. (*Id.*) His disagreement with the justness of the verdict did not distinguish him from competent defendants, and Blinder did not say that he was unable to assist his counsel in a rational manner. (*Id.*)

"Due process requires a trial court to hold a competency hearing *sua sponte* whenever the evidence before it raises a reasonable doubt whether a defendant is mentally competent." *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997) (citing *Pate v. Robinson*, 383 U.S. 375, 385 (1966)); *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011) (judge must conduct a competency hearing when the evidence before the court raises a "bona fide doubt" as to a defendant's competence to stand trial). In evaluating a claim that the trial court violated due process, a federal habeas court considers "whether a reasonable judge, situated as was the trial court judge . . . should have experienced doubt with respect to competency to stand trial." *Stanley*, 633 F.3d at 860 (quoting *De Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir.1976) (en banc)). To be competent, a defendant must have (1) "a rational as well as factual understanding of the proceedings against him," and (2) "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Stanley*, 633 F.3d at 860 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)). "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is

---

[2] "There is no question the trial court applied a standard not found in the relevant statutes or cases . . . Nevertheless, the standard employed by the trial court essentially included the section 1367 [standard] competency test, plus several additional requirements more favorable to the [petitioner]. Accordingly, the court's utilization of a standard different from that set forth in section 1367 was harmless error." (Ans., Ex. 8 at 8.)

[3] The state appellate court saw no probative value in a 2004 mental health report on petitioner because it was a decade old. (Ans., Ex. 8 at 9 n.7.)

required." *Stanley*, 633 F.3d at 860 (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). A state court's determination that no competency hearing is required is a factual determination entitled to deference under AEDPA. *Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

Habeas relief is not warranted here. The state appellate court reasonably determined that the trial court's decision was supported by the record. First, Blinder's report provided evidence that petitioner had a rational and factual understanding of the proceedings against him, as required by *Stanley*. Blinder found that petitioner understood his attorney was there to defend him, and that the prosecutor "puts people away." He also understood the jury and judge were there to be fair, though he did believe they were infected by "the evil forces arrayed against him." He also understood that there was a verdict against him, though his delusions prevented him from seeing whether it was just. Second, Blinder's report provided evidence that petitioner had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, as required by *Stanley*. Petitioner was a "reasonably articulate individual who comprehends all questions." His narrative of events was coherent and logical, and he was oriented to time, place, and person.

On this record, the trial court's determination was supported by the record. A reasonable judge in the trial judge's position would not have a reasonable or bona fide doubt as to petitioner's competence. Though petitioner had delusions, he also showed that he understood the proceedings and was able to assist his attorney. When there is such strong evidence of competency, the evidence of a mental illness diagnosis or the need for treating medication is not sufficient to overcome the presumption that the trial court was correct in its determination. *Torres*, 223 F.3d at 1103. Also, because the determination is supported, the state appellate court's rejection of petitioner's claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

## II. Flight Instruction

Petitioner claims the trial court violated his due process right to a fair trial when it gave the jury a flight instruction. He contends there was insufficient evidence to support the giving of the instruction,[4] and that the instruction allowed the jury to make impermissible inferences about petitioner's conduct. (Pet. at B1–B3, B3–B4.)

The following flight instruction was given to petitioner's jury:

> In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows: [¶] The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine. [¶] No further instruction on the subject of flight need be given.

(Ans., Ex. 8 at 3.)

The relevant facts are as follows. According to one version of events based on evidence presented at trial, petitioner left his house soon after seeing Frances's injuries. He asked Jose Parra for a ride to the BART station, telling him he was going to Walnut Creek. Parra described petitioner during the drive as "kind of upset, but I don't know why." It is notable that he did not go to his house, which was across the street (Ans., Ex. 2 at 72), or to find Frances's attacker. Petitioner later called Parra from San Francisco and asked him to pick him up there.

The state appellate court rejected petitioner's claim. It found there "was sufficient evidence [petitioner] left as soon as he realized the extent of [Frances's] injuries (and then

---

[4] Respondent contends that this claim should be reviewed de novo. He arrives at this conclusion through the following line of reasoning. Petitioner did not raise a federal challenge to this part of the flight instruction until he filed his petition for direct review in the state supreme court. That court's declination to review the petition was not an adjudication on the merits. Therefore, according to respondent, no state court ruled on the federal constitutional claim. AEDPA, which accords deference to state court adjudications of the merits of claims, is inapplicable and the claim should be reviewed de novo. This Court, however, is satisfied that petitioner raised a federal constitutional challenge on direct review to the state appellate (Ans., Ex. 6 at 35, 50) and supreme courts. Therefore, AEDPA applies to this Court's review of the claim.

stayed away), justifying the instruction on flight." (*Id.*, Ex. 8 at 4.)

To obtain federal collateral relief for errors in the jury charge, a petitioner must show the disputed instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* In other words, a federal habeas court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

Habeas relief is not warranted here. The state appellate court reasonably determined there was evidence petitioner left Frances's house in order to avoid arrest, such as testimony that he did not go to his house, but to San Francisco. Because there was sufficient (though not robust) evidence to support the flight instruction, petitioner has not shown that the instruction infected the trial such that he was deprived of due process or that impermissible inferences were drawn. Furthermore, the instruction did not create a presumption of guilt. It merely suggested one way to see the evidence the jury had heard, a suggestion the jury was free to reject. Also, flight evidence is not "sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence." The prosecutor still had to prove beyond a reasonable doubt every element of the charged offenses.

Also, even if the instruction was given in error, such error was harmless. There was strong evidence of guilt: the clarity of Mercedes's testimony (which included Frances's admissions to two persons that petitioner hit her); the odd, perhaps implausible, version of events presented by Frances; her broken jaw; and petitioner's failure to visit her in the hospital. The state appellate court's rejection of this claim was reasonable, and is entitled to AEDPA deference. This claim is DENIED.

**CONCLUSION**

The state court's denial of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED. The Clerk shall enter judgment in favor of respondent, and close the file.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

**IT IS SO ORDERED.**

DATED: November 23, 2015

RICHARD SEEBORG
United States District Judge